Q1LAW OFFICES OF EARL ANTONIO WILSON
Attorneys for Plaintiff
65 Broadway – Suite 833
New York, New York 10006
Phone: (212) 227-4455
Fax: (888) 965-6442
Earl Antonio Wilson, Esq. (EAW 5466)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GEORGE LAWSON

                        Plaintiff,

              -against-

NEW YORK CITY BOARD OF EDUCATION,
also known as NEW YORK
CITY DEPARTMENT OF EDUCATION, CLEVELAND
PERSON, LEIA MC KINLEY, MARLENE FILEWICH,
FRANK POLIETTA, OLIVIA LYNCH, JOEL KLEIN,
MARCEL KSHENSKY, MARY GORMAN and HEIDI DIEN
LUDWIG, individually and in their official capacities

                     Defendants.
------------------------------------------------------------------X

Case Number: 05 CV 825

PLAINTIFF'S
OBJECTIONS TO
REPORT OF THE
MAGISTRATE
JUDGE

## PLAINTIFF'S OBJECTIONS TO REPORT OF THE MAGISTRATE JUDGE

COMES NOW plaintiff, George Lawson, by and through counsel, and submits the following set of objections to the Report of the Magistrate Judge. The Magistrate Judge's Report is 77 pages long and Mr. Lawson has only ten days to prepare and file his Objections. Thus, while he has tried to be comprehensive and specific about his objections and provides reasons for his objections whenever possible, he asks the Court to note that he objects to all of the Magistrate's Conclusions of Law. Many of Mr. Lawson's objections herein, particularly to the Facts as found by the Magistrate Judge, concern omissions of facts, or preclusions of facts rather than simple errors of fact. Plaintiff was never able to put forward its case because the Magistrate did not accept or include significant evidence submitted to the court. The circumstances behind the non admission of the information submitted is outlined in the letters sent to the court, attached as Exhibit 0. Mr. Lawson respectfully requests that the court view the evidence submitted in the

1

Q1LAW OFFICES OF EARL ANTONIO WILSON
Attorneys for Plaintiff
65 Broadway – Suite 833
New York, New York 10006
Phone: (212) 227-4455
Fax: (888) 965-6442
Earl Antonio Wilson, Esq. (EAW 5466)


UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GEORGE LAWSON

                                           Case Number: 05 CV 825

                  Plaintiff,

                                           PLAINTIFF'S
                                           OBJECTIONS TO
                                           REPORT OF THE
                                           MAGISTRATE
                                           JUDGE

               -against-

NEW YORK CITY BOARD OF EDUCATION,
also known as NEW YORK
CITY DEPARTMENT OF EDUCATION, CLEVELAND
PERSON, LEIA MC KINLEY, MARLENE FILEWICH,
FRANK POLIETTA, OLIVIA LYNCH, JOEL KLEIN,
MARCEL KSHENSKY, MARY GORMAN and HEIDI DIEN
LUDWIG, individually and in their official capacities

                  Defendants.
-----------------------------------------------------------------------X

<u>PLAINTIFF'S OBJECTIONS TO REPORT OF THE MAGISTRATE JUDGE</u>

COMES NOW Petitioner, George Lawson, by and through counsel, and submits the following set of objections to the Report of the Magistrate Judge. The Magistrate Judge's Report is 77 pages long and Mr. Lawson has only ten days to prepare and file his Objections. Thus, while he has tried to be comprehensive and specific about his objections and provides reasons for his objections whenever possible, he asks the Court to note that he objects to all of the Magistrate's Conclusions of Law. Many of Mr. Lawson's objections herein, particularly to the Facts as found by the Magistrate Judge, concern omissions of facts, or preclusions of facts rather than simple errors of fact. Plaintiff was never able to put forward its case because the Magistrate did not accept or include significant evidence submitted to the court. The circumstances behind the non admission of the information submitted is outlined in the letters sent to the court, attached as Exhibit 0. Mr. Lawson respectfully requests that the court view the evidence submitted in the

1

opposition to the Motion for Summary Judgment. Mr. Lawson also respectfully requests that the court view the attached Exhibits as they are probative of Mr. Lawson's case. Without them, the facts connected to the allegations seem empty and inconsequential. Mr. Lawson attempts to specifically address each and every issue in this Objection.

In an attempt to give some structure to Mr. Lawson's Objections, we have modeled the objections under the format used by the Magistrate..

## Case Overview

Plaintiff Lawson filed a discrimination claim under 42 U.S.C. §§2000e, et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981, New York Executive Law §§290, et seq. and the New York City Human Rights Law, ("NYC HRL") NYC Admin. Code §8-101 et seq. Plaintiff Lawson first filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of the unlawful acts alleged herein. Pursuant to a dual filing arrangement, and in accordance with the EEOC's normal operating procedures, those charges, on information and belief, were also forwarded to and filed with the New York State Division of Human Rights.

On or about October 29, 2004, plaintiff Lawson received a right to sue letter and plaintiff thereafter filed a lawsuit.
Plaintiff George Lawson is a black, West Indian permanent resident of the United States. He began working for defendant New York City Department of Education ("NYCDOE) in September 2000 as a provisional part time teacher. From the fall of 2000 through June 2003, he worked as a full time Social Studies teacher and Science teacher at Middle School 113 ("MS 113"). He has a BA and an MA from Hunter College and is currently enrolled in a Masters Programs at Lehman College. He was terminated by defendant in or about June 2003 as a result of receiving an unsatisfactory rating, and then reinstated in September 2004 when that rating was reversed by defendant NYCDOE.

Defendant NYCDOE was and is a governmental entity organized under the Education Law of the State of New York. It was the employer of all parties to the action during the school year 2002-03 and was responsible for all policies and practices set forth herein. Defendant Marlene Filewich, during the school year 2002-03 was the District Superintendent of Community School District 11. At present on information and belief she is now a Local Instructional Supervisor. Defendant Frank Polietta during the school year 2002-03 was one of the assistant district superintendents in Community School District 11. On information and belief, he is now a Local Instructional Supervisor for another district within defendant NYCDOE.

Defendant Olivia Lynch during the school year 2002-03 was an incoming Local Instructional Supervisor in Community School District 11. On information and belief, she is no longer employed by defendant NYCDOE. Defendant Cleveland Person during the school year 2002-03 was principal of MS 113. On information and belief he is no longer employed by defendant NYCBOE. Defendant Leia McKinley during the school year 2002-03 was one of the assistant principals of MS 113. On information and belief she is still employed by defendant NYCBOE in another capacity. Defendant Joel Klein was and is the Chancellor of defendant NYCBOE.

2

Defendant Marcel Kshensky, during the school year 2004-2005, was principal of Middle School 135. Defendant Heidi Dien Ludwig, during the school year 2004-2005, was Local Instructional Superintendent of District 11. On information and belief, he is still employed by NYCBOE. On information and belief, none of the individual defendants are of West Indian ancestry or national origin.

MS 113 is located in the Bronx. However, the school is currently not in existence, thought the physical facility is still there. The students are predominantly black, and of West Indian national origin. Many are recent immigrants. A much smaller proportion of the teachers and administration at MS 113 are of West Indian national origin. When plaintiff started working at MS 113, there existed a Caribbean Focus Team ("CFT"), which consisted of several classes of students who had immigrated from the West Indies in the past three years, and teachers of West Indian national origin who were especially assigned to teach them. These teachers included, but were not limited to: plaintiff, Jacqueline Binns, Carmen Dewar, Joanne Smith, Janet Stewart, Harold Moore, and Brenda Williams. During the year beginning September 2002 other teachers were added, including Ms. Laidley and Ms. P. Mitchell. The team was led by Jacqueline Binns. The teachers assigned to the CFT worked together to establish consistent rules, policies and curricula. The teachers paid special attention to assimilation issues faced by the students and their parents. Most of the students in plaintiff Lawson's homeroom were members of the CFT.

When plaintiff was first assigned to MS 113, the principal was Cheryl Lugo. In 2002, Ms. Lugo decided, for the 2002-03 academic year, to consolidate the CFT classes on the third floor, and to place them under the supervision of Assistant Principal Theresa Verderosa. However, in September 2002, a new Acting Principal, defendant Cleveland Person, was assigned to the school. Defendant Person is not of West Indian national origin. Defendant Person assigned Defendant Leia McKinley, an assistant principal, to supervise the third floor instead of Ms. Verderosa. Defendant McKinley admitted later that she was of West Indian national origin. In addition, in the fall of 2002, a family contact person of West Indian descent, Jeffrey McFarlane, who had worked closely with West Indian students, teachers and their families for over five years, was told by Mr. Person that his position was eliminated. On information and belief, two weeks later, he was replaced by a less qualified woman who was not of West Indian descent.

In December 2002, in a faculty meeting, defendant Person was discussing the behavior of a student who allegedly defecated on the floor. He called this a "cultural behavior." Many of the students in the school are West Indian immigrants or African immigrants. The West Indian teachers viewed this statement as an insensitive statement toward persons of other national origins and several objected to Mr. Person's characterization. Defendant Person defended his statement by listing cultures where he believed that defecating on the floor was in fact a cultural behavior, naming as examples the West Indian countries of Haiti and the Dominican Republic. Several teachers complained, including plaintiff, Carmen Dewar, Jacqueline Binns, George Foster, Janet Stewart, and LeShawn Jackson. In addition, various West Indian teachers complained about Mr. Person's statement to UFT representative Paul Egan and to community leader Hugh Beckford. Mr. Beckford, in turn, raised the issue with the District Superintendent, defendant Filewich.

Other teachers complained to members of the local Community School Board. An article concerning defendant Person's statement appeared in a local West Indian newspaper, The Gleaner Extra, on December 30, 2002 and stories concerning the issue were broadcast on a local radio station WLIB. At the request of his superiors in the District Office, at a UFT meeting, defendant Person spoke to the teachers, saying if he offended anyone he was sorry.

However, in subsequent weeks, those teachers who had complained about defendant Person's statement, including plaintiff, began facing an onslaught of further discrimination and retaliation.

In January 2003 an anonymous letter was placed in plaintiff Lawson's school mailbox and the boxes of other West Indian teachers during the school day. These mailboxes are located in the school office right near defendant Person's office. The only persons with access to them are staff, members of the Parents' Association and students with special permission. This anonymous letter described those who had complained about defendant Person's statement as "evil forces". Plaintiff Lawson complained to the UFT about this letter and also to defendant Polietta. No action was taken.

In addition, defendant Person removed students' work from the bulletin boards of numerous teachers who were members of the Caribbean Focus Team, who were of West Indian national origin, including plaintiff Lawson, Jacqueline Binns, Janice Nelson-Madden, and Joanne Smith. Defendant Person claimed the students' work displayed wasn't good enough to be shown. Because most of these teachers' students were recent West Indian immigrants, the results of his actions was to bar the display of these students' work. Bulletin boards of non-West Indian teachers were allowed to remain up even though the work displayed had errors.

In addition, West Indian teachers suffered exclusion from various training opportunities, and they and their students were denied access to books, equipment and other resources. For example, a power point workshop was held in the spring of 2003. No West Indian teachers were invited to participate and invitations were limited to white teachers only.

Plaintiff Lawson taught five classes in Social Studies, totaling about 150 students. He was given only 19 textbooks for all 150 to share. Many of them were defaced, with torn and missing pages. Similarly, Carmen Dewar, another West Indian teacher, who taught science to the same students, was given only 30 books for her 150 students.

By contrast, non-West-Indian teachers were given double sets of these same textbooks, so that each of their students had two, one that was kept at home and one that was kept in the classroom. These teachers, all of whom were white, included Frank Cassidy, Patty Matone, Philip Althouse, Rachel Selkowitz, Jack Dean and Paul Egan. Plaintiff Lawson complained about this situation to defendants McKinley, Person, and Polietta, but no action was taken.         17. Similarly, plaintiff Lawson was not given a copy of the Teachers' Edition of the Social Studies text book, while the other social studies teachers, all of whom were non-West Indian, did receive a copy. George Foster, a special ed/inclusion teacher didn't receive a copy of the Teachers' Edition of the Social Studies textbook until his supervisor complained.

Plaintiff Lawson's students were also given very limited access to the library. When he tried to schedule time in the library for his students, the librarian, who is not of West Indian national

origin, told him he would have to wait 2 - 3 weeks for access to the library because there was a crowded schedule. By contrast, classes of white, non-West Indian teachers were allowed to get immediate access. These teachers were even allowed to use the library for wedding showers, baby showers, birthday parties and staff parties during the school day. Plaintiff Lawson complained about lack of access to the library to defendant McKinley, who took no action.

For most of the year, almost all of the computers in plaintiff Lawson's classroom were malfunctioning, and those were subject to repeated acts of vandalism which were not redressed. The damaged and broken computers were not repaired although the principal, assistant principal and technicians were all on notice of the problem. Plaintiff Lawson asked defendant McKinley if he could have access to a group of unused portable laptops for his students, given the condition of the computers in his classroom. Ms. Lugo had previously told him that she had purchased those laptops especially for the use of the CFT teachers who taught social studies and science. However, defendant McKinley refused to let plaintiff Lawson use them, and the laptops remained unused. Other West Indian teachers had similar problems, including but not limited to P. Mitchell, Joanne Smith, Carmen Dewar, Janet Stewart, Brenda Williams, Winston Weir and Norval Goulbourne.

By contrast, during the school year, several white, non-West Indian teachers got their computers repaired and supplied with new mouses, printers and/or keyboards. These included but were not limited to Megan Quinn, Frank Cassidy, Patty Matone, Jack Dean, and Philip Althouse. In addition, a group of three or four students who were non-West Indian, openly vandalized the computers in plaintiff Lawson's classroom, pulling keys out of the keyboard and throwing them around. Defendant McKinley was standing nearby and saw the students. Despite plaintiff Lawson's request that she intervene, she took no action.

Similarly, plaintiff Lawson requested an overhead projector for use in his classroom, but his request was denied. Other West Indian teachers, including but not limited to Carmen Dewar and Janet Stewart, also requested projectors and their requests were denied. By contrast, white, non-West Indian teachers received projectors for classroom use, including but not limited to Megan Quinn, Frank Cassidy, Patty Matone, and Rachel Selkowitz. Similarly, plaintiff Lawson was not allowed to use the TV or VCR located in the assistant principal's office, but another non-West Indian teacher, Mr. M. Caraballo, was.

Plaintiff Lawson complained to defendants Person and McKinley in writing on numerous occasions about his and his students' lack of access to books and equipment. He also complained to defendants Person, Polietta and Lynch. However, no action was taken.

Before the school year beginning September 2002, plaintiff and several other Caribbean Focus Team teachers had a practice of meeting with students after school to help them improve their writing skills by having them draft articles for possible publication in The Gleaner and other community newspapers. During the 2002-03 school year they were told they could no longer use the school facilities for this purpose. However, white, non-West Indian teachers Philip Althouse and Mr. J. Shapiro were allowed to use the school gym after school for student basketball practice.

5

Plaintiff also observed that the students of the West Indian teachers, especially the students who were members of the Caribbean Focus Team, were discriminated against and retaliated against by the school administration. For example, the school set up an after school enrichment program with the stated aim of improving student standardized test scores. None of the students on the Caribbean Focus Team were invited to participate. Plaintiff Lawson complained about the exclusion of these students to defendant McKinley, who took no action. After the parent of one West Indian child complained to NYCBOE officials, that child was admitted to the program. However, plaintiff Lawson subsequently observed defendant McKinley retaliating against the child by yelling at him about his negative attitude. The child subsequently reported to plaintiff Lawson that defendant McKinley on numerous occasions had reprimanded him without provocation.

Similarly, on one occasion just as the school day was ending, at 2:20 PM, a West Indian student in plaintiff Lawson's class suffered an accident and had a tooth knocked out. He informed Dean Ivelise Perez, who is not of West Indian national origin. Ms. Perez refused to assist the child and told him there was nothing that could be done because the nurse had gone home. She said it was 2:45 PM and she was off the clock. However, on another day, at about 3:30 PM, a non-West Indian student suffered an injury and plaintiff Lawson observed Ms. Perez assisting the child herself.

Plaintiff also observed that his West Indian students appeared to be terrified of defendant McKinley, because of her hostile conduct toward them. For example, during one occasion when defendant McKinley was observing plaintiff Lawson's class, a West Indian student, a recent immigrant, looked up from an examination she was taking. Defendant McKinley, without provocation, yelled "What's your problem?" at the student and threatened to remove her from the classroom. On another occasion, one of plaintiff Lawson's West Indian students looked up while taking a standardized test, and Ms. McKinley yelled at her to put the paper down. Plaintiff never saw Ms. McKinley treat any students in this manner who were not members of the Caribbean Focus Team.

In addition, the administration of MS 113, especially defendant Person, was hostile to West Indian parents. For example, Evangelyn Webster, a West Indian parent who was a volunteer in the school, and an active member of the Parents Association, was called in to a meeting with defendant Person on May 15, 2003 and informed that her privileges in the school were being suspended indefinitely. Ms. Webster had previously complained to the District Superintendent and others about defendant Person's "cultural behavior" statement. Ms. Webster's suspension was only revoked after she complained directly to the Chancellor.

As a result of plaintiff Lawson's complaints of discrimination, and his comments on various other matters of public concern involving the education of the children and the treatment of the teachers, he has suffered from a pattern of retaliation. This began during the school year 2002-03 with unfounded complaints about his performance. For example, he was twice written up because allegedly his class was waiting for him in the hallway at the start of homeroom period. However, at the same time the classes of non-West Indian teachers Eric Mandorf, Rachel Selkowitz, and Mr. W. Lulow were waiting for them in the hallway, and those teachers were not

6

disciplined. On another occasion, a non-West Indian teacher, Ms. Colon and plaintiff Lawson entered the building together. He was disciplined for lateness and she wasn't.

Those West Indian teachers who complained about Mr. Person's behavior were also observed by the administration more frequently than other teachers. For example, plaintiff Lawson was observed twice in 2002-3, as were Janet Stewart, George Foster and Brenda Williams. Some white teachers, such as Vincent Richards, were not observed at all. On information and belief Mr. Caraballo, who is not of West Indian national origin has been not observed in about five years.

In May and June 2003, numerous West Indian teachers at MS 113 were told that they were going to be given Unsatisfactory ("U") performance ratings, including but not limited to, plaintiff, Brenda Williams, P. Mitchell, Delcia Calwood, George Foster, Stephanie Jackson, and A. Laidley. In addition, one African-American teacher, LaShawn Jackson, who had previously complained about Mr. Person's December 2002 comment, was told she was going to be given a U rating. A U rating results in the termination of a non-tenured teacher. All of these teachers were told that if they submitted their resignations, their U ratings would be changed to S, or Satisfactory ratings. On information and belief, not a single white teacher was given a U rating.

Plaintiff Lawson did not submit a resignation letter and chose to appeal his U rating.. On or about June 13, 2003 plaintiff Lawson received a letter from Mr. Person stating that his services would be no longer needed at MS 113. On June 17, 2003 a student in one of plaintiff Lawson's classes found copies of an anonymous letter in the classroom. It was addressed, "To all the Barbarians and Banana Boat Niggers in MS 113" and it named various West Indian teachers, including plaintiff Lawson, Binns, Moore, Smith, Dewar, Stewart, Laidley, Nelson-Madden, Mitchell, Foster and B. Williams. The letter contained obscene and racially offensive language and stated that the named teachers would all be removed from the school. On information and belief, the school administration did not immediately report this to defendant NYCDOE and did not report it to the police. Ms. Dewar reported it to the local precinct and they said they had not heard about it before and that the school safety officer and the principal were supposed to have reported it.

Plaintiff Lawson reported the letter to Jacqueline Binns, the head of the Caribbean Focus Team, and she said she would report it to defendant Person. At the urgent request of many teachers, defendant Person finally agreed to hold a meeting concerning the letter. He said he would make an effort to investigate the letter, but plaintiff was never notified that further action was taken.

Plaintiff Lawson made a complaint of discrimination and retaliation to defendant NYCBOE's Office of Educational Opportunity. By letter dated July 16, 2003 his complaint was rejected. On information and belief, for the school year September 2003, no West Indian teachers were hired at MS 113 to replace the numerous teachers who were forced to resign as a result of their U ratings. The Caribbean Focus Team was disbanded. The West Indian teachers who remained continued to suffer from discrimination and retaliation. For example, West Indian teachers with seniority, including but not limited to: Jacqueline Binns, Janet Stewart, and Carmen Dewar were moved out of their homerooms and required to float. On information and belief, their homerooms were given to non-West Indian teachers. On information and belief, Stewart and Dewar were only restored to their homerooms after they were required to complaint to the

7

district office and to their union. Binns, the former head of the CFT, was never restored to her homeroom, on information and belief. For further details, please see the Amended Complaint attached as Exh. 1.

## Objections to "Facts"

Objections to Facts Recounted by the Magistrate Judge:

II. Facts
  A. Facts alleged in the Amended Complaint

1. RMJ at page 4. "The amended complaint does not detail any complaints made by plaintiff"

Objections:

This is an overly broad statement.

In Plaintiff's amended complaint, Plaintiff had described his complaints in detail. For example, In December 2002, in a faculty meeting, defendant Person was discussing the behavior of a student who allegedly defecated on the floor. He called this a "cultural behavior." Many of the students in the school are West Indian immigrants or African immigrants. The West Indian teachers viewed this statement as an insensitive statement toward persons of other national origins and several objected to Mr. Person's characterization. See Exh. 1, Plaintiff's Amended Complaint at paragraph 9.

Plaintiff made complained about the anonymous letters and Defendant Person's statement as "evil forces" to the United Federation of Teachers ("UFT") and also to Defendant Polietta. The detailed complained as follows: In January 2003 an anonymous letter was placed in plaintiff Lawson's school mailbox and the boxes of other West Indian teachers during the school day. These mailboxes are located in the school office right near defendant Person's office. The only persons with access to them are staff, members of the Parents' Association and students with special permission. However, no action was taken after complaining to both UFT and to Defendant Polietta. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 12.

Apart from the above complaints, Plaintiff also detailed his complaint about inadequate distribution of school textbooks to defendants McKinley, Person, and Polietta, again no action was taken. The non-West-Indian teachers were given double sets of these same textbooks, so that each of their students had two, one that was kept at home and one that was kept in the classroom. These teachers, all of whom were white, included Frank Cassidy, Patty Matone, Philip Althouse, Rachel Selkowitz, Jack Dean and Paul Egan. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 16.

Plaintiff's numerous complaints also included his students had limited access to the library. When Plaintiff tried to schedule time in the library for his students, the librarian told Plaintiff there was a crowded schedule, and he needed to wait for 2-3 weeks, while classes of white, non-West Indian teachers were allowed to get immediate access to the library. Again, Plaintiff

8

complained about lack of access to the library to defendant McKinley. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 18.

Moreover, Plaintiff complaint and asked Defendant McKinley whether he could have access to a group of unused portable laptops for his students due to the fact that almost all of the computers in plaintiff's classroom were malfunctioning. Defendant McKinley responded in negative. Other West Indian teachers had similar problems. By contrast, several white, non-West Indian teachers got their computers repaired and supplied with new mouses, printers and/or keyboards during the school year. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 19.

Problems regarding lack of textbooks and equipment had been complaint by Plaintiff on numerous times Defendants Person, Polietta and Lynch. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 21.

Plaintiff also complaint to Defendants McKinley on behalf of his students when he observed students of the West Indian teachers, especially the students who were members of the Caribbean Focus Team, were discriminated against and retaliated against by the school administration. After making the complaint to McKinley, not only that he did not take any action to protect those students, McKinely against a particular child who was a member of the Caribbean Focus Team when that child's parent complaint to NYCBOE officials. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 23.

Plaintiff reported there was continuous discrimination against West Indian students and parents by Defendant Persons and McKinley. As a result of plaintiff Lawson's complaints of discrimination and his comments on various other matters of public concern involving the education of the children and the treatment of the teachers, he has suffered from a pattern of retaliation. His retaliation including but not limited to frequent observations by administration (Plaintiff was being observed twice in year 2002-2003, while other white teachers were not observed once in five years), were told to be given a Unsatisfactory ("U") performance ratings, to received a satisfactory ("S") performance ratings only by resignations. Plaintiff refused to resign, and he indeed received a U performance ratings. See Exhibit 1, Plaintiff's Amended Complaint at paragraphs 28-29.

On June 17, 2003, there were copies of an anonymous letter in the classroom found by a student. The letter was addressed "To all the Barbarians and Banana Boat Niggers in MS 113" and it named various West Indian teachers, including plaintiff. The letter contained obscene and racially offensive language and stated that the named teachers would all be removed from the school. Plaintiff Lawson reported the letter to Jacqueline Binns, the head of the Caribbean Focus Team, and she said she would report it to defendant Person and would conduct investigation. Plaintiff was never notified that further action was taken. See Exhibit 1, Plaintiff's Amended Complaint at paragraphs 32-33.

Since no action was taken by school officials and principal for all those complaints made by Plaintiff, Plaintiff finally made a complaint of discrimination and retaliation to defendant NYCDOE's Office of Educational Opportunity. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 34.

9

In sum, from all of the above paragraphs, Plaintiff had detailed his complaints in his amended complaint.

2. RMJ at page 8 – "The amended complaint contains no allegations connecting the anonymous letters to defendants".

Objections:

There were two (2) allegations connecting the anonymous letters to defendants in Plaintiff's amended complaint. The first allegation was about an anonymous letter being placed in plaintiff Lawson's school mailbox during the school day. Only staff, members of the Parents' Association and students with special permission has access to that mailbox. This anonymous letter described those who had complained about defendant Person's statement as "evil forces". See Exhibit 1, Plaintiff's Amended Complaint at paragraph 12. See Exhibit 13, first anonymous letter.

The second allegation connecting the anonymous letters to defendants was about copies of an anonymous letter was found by one of the Plaintiff's student in the classroom on June 17, 2003. It was addressed, "To all the Barbarians and Banana Boat Niggers in MS 113" and it named various West Indian teachers, including plaintiff Lawson. The letter contained obscene and racially offensive language and stated that the named teachers would all be removed from the school. This anonymous letter was found after Plaintiff made numerous complaints regarding the discrimination against West Indian students and parents, and his complaints to Defendants regarding textbooks, limited access to library, and equipment. Also, this anonymous letter was found after Plaintiff was being retaliated, such as he was frequently observed by administration, was given an Unsatisfactory ("U") performance ratings and a termination letter when Plaintiff refused to resign. This anonymous letter was found in Plaintiff's classroom. This anonymous letter has indirect and circumstantial connection with Defendants. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 32. See Exhibit 13, second anonymous letter.

3. RMJ at page 10—"plaintiff refused the position he was offered at Middle School 135"

Objections—

Kshensky only offered Plaintiff a substitute position, as a per diem teacher. If Plaintiff accepted such a substitute position, his chances for tenure would have been ruined. In addition, it violated the terms of his reinstatement as a social studies teacher. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 47.

### B. Facts Defendants Claim Are Established by Discovery

4. RMJ at page 18---"Defendant have submitted evidence that all teachers at MS113 were issued textbooks based on the number of students in the teacher's class and that the textbooks were used primarily as classroom resources because only a small percentage of MS 113 students could read at grade level."

10

Objections—

Maximum number of students for each class is thirty (30) students. Plaintiff had five (5) classes. Each class consists of the maximum number of thirty (30) students, totaling 150 students. Plaintiff was provided less than 20 textbooks for all 150 students. Not only there were inadequate amount of textbooks were provided, textbooks that Plaintiff received were also defaced and torn, with missing pages. However, non-West Indian colleagues who were white and did not criticized Person were provided with two sets. Therefore, not all teachers at MS113 were issued textbooks based on the number of students in the teacher's class. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 16.

Plaintiff had 150 students in total. He found only 19 of them could not read at grade level. Other teachers had the same level of students, but they could have two sets of textbook even as Defendant claimed only a small percentage of MS113 students could read at grade level. See Exhibit 2, Affidavit of Plaintiff, George Lawson at paragraphs 88-105. See also Exhibit 3, Affidavit of La Shawn Jackson paragraph 5. Exhibit 4, Affidavit of Roy Millington Lee paragraph 6 and Exhibit 5, Affidavit of Sandra Edward Smith paragraphs 37-38.

5. RMJ at page19---"Person testified that when he learned that the textbooks issued to plaintiff were torn and dirty, he directed Assistant Principal McKinley to issue replacements for them."

Objections—

The fact of no replacement was being received has been omitted. Not just there was no replacement, the most important fact is that other white teachers, non-West-Indian teachers were given two (2) sets of these same textbooks. Each of their students had two, one that was kept at home and one that was kept in the classroom. See Exhibit 1, Plaintiff's Amended Complaint at paragraph 16.

6. RMJ page 20----"…any person seeking to use the school's premises for after school activities were required to obtain written permission and identify all the student participating in the activity. Plaintiff testified that he was never aware of this procedure".

Objections —

There was no such policy was initiated by Defendant Person, and no such policy in school. Plaintiff was not aware of the procedure due to its inexistence. Defendant Person claimed there was such policy initiated by him, but he never provided any proof when Plaintiff requested for the records of any written permissions, and/or any document identifying all the student participation for after school activities in Plaintiff's document demand. In addition, Defendants failed to bring such proof when court ordered them to provide the related relevant documents to plaintiff.

7. RMJ at page 20--- "Assistance Principal McKinley observed plaintiff's class for a fourth time on February 24, 2003 and again rated plaintiff's performance as unsatisfactory."

Objections—

There were only two (2) observations took place in 2002-2003. There was no third or fourth observations took place at any time. Assistance Principal McKinley stated there were two observations. See Exhibit 6, Response to Affidavit of Particulars of EEOC Charge of George A. Lawson v. NYC Dept of Education dated March 29, 2004, page 6, paragraph 32. The two observations resulted plaintiff was rated unsatisfactory for the year 2002-2003.

Please note such U rating was overturned at the U rating hearing in February 2004. The overturned was proven by a memorandum from the Office of Appeals and Reviews dated February 10, 2004, "Please be advised that the employee noted below had an unsatisfactory rating changed to satisfactory as per the attached documentation. Lawson George file # 777799." See Exhibit 7, Memorandum from Virginia Caputo, Office of Appeals and Reviews dated February 10, 2004.

8. RMJ at page 28—"Plaintiff felt hindered because students did not have copies of the textbook to take, and assistant principal advised plaintiff to consult with other teachers to lean how they confronted this obstacle. The assistant principal gave plaintiff an "unsatisfactory" rating for the lesson".

Objections—

Plaintiff consulted Mr. Frank Weatherwax, a social studies teacher on how to confront the problem of textbook. Plaintiff and Mr. Weatherwax came out to have an solution of providing supplements to students such as worksheets and watered down version of the social studies textbook. See Exhibit 8, Worksheet 10, worksheet 14 and a watered down version titled "Road to Independence" of the social studies textbook.

9. RMJ at page 31---"Plaintiff failed to follow through with the directions set forth in the professional plan"

Objections—

Plaintiff strictly followed the professional plan. The plan requested plaintiff to keep a notebook documenting the behavior of his students and to keep his own personal performance journal. Plaintiff kept his notebook and personal performance journal. See Exhibit 9, Professional Plan. See Exhibit 10, personal journal bate stamp P90030-90010, and personal journal for class 7A6. See Exhibit 11, Plaintiff's notebook page 1-6.

Plaintiff was asked to observe Ms. Rose Cunningham, Mr. Laslo Kirchmann, and Ms. Dawnette Phelps of their relationships with students. Plaintiff served Ms. Cunniningham once, due to the fact that Ms. Cunningham is difficult to reach, but Plaintiff observed Mr. Kirchmann, and Ms. Phelps several times. See Exhibit 11, Plaintiff's notebook at pages 1-4.

Plaintiff followed the directions of his class's seating plan for each class that he teaches. See Exhibit 11, Plaintiff's notebook at page 5.

Plaintiff was asked to meet Ms. Morse, a literacy coach at least once bi-weekly under the instruction of the Professional Improvement Plan #3. Plaintiff followed the instruction and met with Ms. Morse at least once bi-weekly, and a letter written by Ms. Barbara Morse dated January 30, 2008 rated plaintiff's performance was satisfactory. See Exhibit 12, a letter from Ms. Barbara Morse dated January 30, 2008.

B. Plaintiff's Claims

10. Adverse Job Action – plaintiff experienced termination, loss of benefits, medical coverage. Even though plaintiff was hired as a full time teacher in a clear cut vacancy, plaintiff was only paid as a substitute. See Exhibit 14, P50145-46

To date plaintiff is owed money, an issue that his former union is now pursuing. See Exhibit 15, P50088

Plaintiff also lost benefits, medical coverage, etc. by virtue of the loss of his position with the DOE. I no longer had access to the welfare fund. Any training opportunities that would have been offered were missed out on. I also lost my pension benefits as well.

Disparate Treatment -- Objection

11. Caribbean teachers such as plaintiff who criticized Person were monitored excessively. Other non Caribbean and white teachers were not, notably – Mr. Caraballo and Mr. Vincent Richards . See The DOE, via Position Statement, attached as Exhibit 16, par. 4, stated that they were not observed.

Also Ms. Brodie, Mr. Carpanzino, Ms. Caruso, Ms. Robin Portnoy. Megan Quinn, Ms. Carolla - Cibelli etc. were among the scores non-West Indian and white teachers, who were not observed either. The court order to produce the observation report of all PPTs at MS 113 in 2002-03 was never adhered to despite a motion to compel action instituted when they initially failed to do so

12. Evidence that write ups and reprimands – See Exh. 17, Natasha Ellis Affidavit par.50-53

See Exh. 18 Ashley Reid's affidavit: par. 50-57;

See Exh. 3, LaShawn Jackson's Affidavit indicated that plaintiff was asked to go to a coverage when he did not have one, or he was notified at the last minute while at lunch- par.8;

Plaintiff and non -West Indian Jean Colon both arrived late for their classes, both arriving at the same time. McKinley wrote plaintiff up, accused him of being late for his class, while Ms. Colon was not written up.

See Exh. 19 time Card for Colon and Lawson.

13. Coverage arrived at last minute to plaintiff. See Exh. 3, LaShawn Jackson's affidavit. : P 50337, par. 5 & 6,

13

The reprimands and excessive scrutiny constituted adverse employment actions in the absence of other negative results, such as the two U ratings and subsequent dismissals.

The write ups were used to discipline plaintiff and defendant Person indicated that plaintiff was removed for pedagogy and attendance. See Exh. 20, Letter from DOE to plaintiff indicating reason for termination - P50083

The DOE stated that plaintiff was terminated because of poor attention to lesson planning and execution, and that he was a PPT. See DOE Position Statement, page 10, and paras. 4 & 5. Other PPTs were not observed (i.e. Carpanzino and Brodie, among others). The Court Order demanding production of Observation Reports was never honored.

Denied Adequate Supplies of Books, computers, etc.

14. These complaints are not too minor. It was disruptive and kept plaintiff from using the tools to perform his job. Social studies is a complex subject, that requires a lot of reading, requires a lot of quiet home time study in order to reinforce lesson taught, and without such availability of material students and teacher cannot work effectively. He was then evaluated on performance and found wanting, creating an adverse employment condition. His colleagues who were all provided with adequate amount were all rated satisfactory when they were evaluated.

See Exh. 17 Natasha Ellis' Affidavit: par. 16-23

See Exhibit 18, Ashley Reid's Affidavit: par. 19-37

See Exhibit 5, Sandra Edwards Smith's Affidavit: par.38

See Exhibit 3, LaShawn Jackson, Affidavit: P 50337, par. 5 & 6,

See Exhibit 4, Millington Lee's Affidavit, page 3, par. 6: P 50246,

See Students' letters indicating lack of books also, as Exh. 21;

See Exhibit 22, Letter sent to the Superintendent's office by Sheron Hamilton: Bate stamp P 50099- P 50100 –Sheron Hamilton Pearson's letter/ fax to Pamela McCarthy). See Letters of various students complaining of textbooks and computers, as Exh. 21.

Computers:

See Exhibit 17, Natasha Ellis par. 28-29

See Exhibit 18, Ashley Reid Affidavit: par. 34

See Exhibit 5, Sandra Edwards Smith's Affidavit: par.38

See Exhibit 23,Marsha Williams Affidavit: par.54-56.

14

<u>Overhead projector:</u>

See Exhibit 23, Marsha Williams Affidavit: par 52-53

See Exhibit18, Ashley Reid Affidavit: par34-36

See Exhibit17, Natasha Ellis paragraph par. 24-26

b. Hostile Work Environment

15. Objection – Pervasive acts of the defendants include – McKinley's intrusion into plaintiff's classrooms up to 4 times a day helped to constitute a hostile work environment.

See Exhibit 17, Natasha Ellis' Affidavit: par.17, 31-58

See Exhibit 18, Ashley Reid par. 40-49

See Exhibit 23,Marsha Williams Affidavit, par. 57-63. See also for Lee and Jackson Affidavit.

16. The Magistrate insists that the acts must alter the terms and conditions of plaintiff's employment. Sufficient evidence exists that there was. See Exh. 17, Ellis Affid; Exh. 23, Marsha Williams Affid, para. 66-69; Students were excluded from the working on journalism class; See Ellis Affid 17.. The documents regarding passes for the school were never submitted by the defendants. The totality of the circumstances details that the pervasive conduct existed. Person's comments were just an incident in many that was pervasive. It may have been the genesis of the problems, however the incidents following plaintiff and others speaking out against it, there was an assault launched on those teachers, bulletin boards were torn down, books were withheld, etc. See Jackson Affid, Exh 3, para. 5. and Lee Affid, Exh. 4, para. 6 regarding the books, computers, etc.

Regarding the letters, while there is no evidence that any of the defendants are directly connected to the letters, the fact that there was no access to the room unless by someone connected to the DOE. Only teachers, administrators and cleaners had access. The mood of the school at the time with respect to hostility was only heightened by the second letter.

2. Wrongful Termination

17. Plaintiff was terminated from MS 113 and 135 and brings a claim for both. Plaintiff established a prima facie case by submitting evidence that he spoke out about issues concerning

Plaintiff's Termination was due to an Inference of Discrimination

The performance reviews submitted by the defendants are common pretextual actions. However, plaintiff was able to defeat the first attempt when his U rating was reversed. See U rating reversal, Exh. 7. Evidence of pretext include s --

### Plaintiff's Retaliation Claims under Section 1981, New York State Executive Law and the New York City Administrative Code

20. Plaintiff demonstrated that he engaged in protected activity; the employer was aware of this activity; the employer took adverse action against him and a causal connection exists between the protected activity and the adverse action. Plaintiff was retaliated against because he spoke up about issues of public concern. See Exh. 24, letter to Klein (Kline (sic)) dated May 27, 2003, Exh. 25, letters to McKinley, as well as dress down Fridays was a member of

21. Plaintiff's protected activity was followed closely by discriminatory treatment. – After the Gleaner, a Caribbean paper, printed a article critical of Person, plaintiff's journalism program with the students was banned immediately. Several of plaintiff's students were not allowed to participate in an after school program – See Ellis and Reid Affidavits. Plaintiff complained to Klein in May 2003, not June 17, 2003 as the R & R states. See Klein Letter.

22. Objection – Plaintiff was retaliated against by not being allowed to practice his writing with the kids. Person also included in his response to the EEOC that he thought that plaintiff was responsible for writing the Gleaner article and that it led to retaliatory conduct against the plaintiff.

Performance - plaintiff was supposedly given a U rating for problems with punctuality and pedagogy. However, several teachers such as Jack Dean, Caruso, Corolla, Peart had attendance and punctuality problems. Plaintiff was absent for only two days and was late only 3 hours, twenty five minutes over an entire year. The question remains unanswered as to what criteria the defendants used to evaluate non West Indian and white teachers, as the evidence sought in that regard was not submitted by the defendants.

23. Objection – Caraballo and Mr. Richards were cited as "similarly situated, non protesting faculty members who did not suffer from the same lack of books, equipment, etc. that plaintuiff cites. See p. 64 of R & R. Plaintiff has substantial documentation and evidence regarding his claims and should be allowed to survive Summary Judgment because of it. To allow otherwise, under the federal rules of disclosure, in particular that plaintiff has complied with, would be an injustice to plaintiff.

### Plaintiff's Claim of a Right to Freedom of Speech under the US & the New York State Constitution was violated

24. Plaintiff clearly engaged in First Amendment Activity by first speaking out at the meeting regarding an issue of public concern, the dress down Friday issues, letter to Klein, his conversations with Filewich and Policttta ( admitted to by both in their depositions.

The protected speech was a "substantial motivating factor in the adverse employment action." RMJ p. 66 because plaintiff's increased scrutiny, negative specialized treatment (books, computers, evaluations) increased almost immediately afterwards. See Person's response to EEOC charge, as Exh. 6. Such acts were not de minimis but were part of the pretext to scrutinize him to the point of eventual termination.

25. The comments by plaintiff about issues of public concern included not only Person's comments, but concurrent issues such as dress down Fridays. Even if the public concern was only about Person's comment, Person's position in the school as the Principal as well as his probable dislike for the plaintiff fueled the discriminatory acts of Person and his agents. This should not be overlooked by the court.

The lenient reading of the court is accurate (RMJ p. 69), but plaintiff asserts that his dismissal from MS 113 and 145 was retaliatory. He is also alleging retaliation even today by the DOE.

26. Plaintiff has submitted evidence regarding his protest and use of protected free speech. Plaintiff does allege that only those who criticized Person were retaliated against and that they were subjected to adverse actions. See para. 11 of Amended Complaint.

All of the "uncontradicted" evidence of defendants submitted to the court is present here. It was actually submitted to the court, which has a full copy with the opposition documents of plaintiff. Therefore, the letters referring to "evil forces", removal of student work from bulletin boards; providing plaintiff's classes with an inadequate number of textbooks and with defaced textbooks, failing to provide plaintiff with teacher's edition of textbook, and depriving plaintiff's students of adequate, operational computers and absence of an overhead projector all have evidence backing them up, despite defendants' submitted evidence.

27. Prior to Person's remarks, plaintiff was rated Satisfactory for the two years before the remarks. See, Exh 27, Rating Sheets dated 2000-2001 and summer 2002. Therefore, defendants' evidence should be weighted. It is also arguable that plaintiff's

     Finally, Mr. Lawson feels that he has a right to his day in court. Plaintiff has, from the beginning of this case, submitted documents to defendants, just some of which are attached to this Objection for the sake of expediency. Mr. Lawson therefore asks that, to the Court reject the RJM and allow plaintiff to proceed to trial on the merits of his claims..

Respectfully submitted, this 14th day of March, 2011.

*/s/*

LAW OFFICES OF EARL ANTONIO WILSON
Attorneys for Plaintiff

17

65 Broadway – Suite 833
New York, New York 10006
Phone: (212) 227-4455
Fax: (888) 965-6442
Earl Antonio Wilson, Esq. (EAW 5466)